**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

MORGAN MILICENT MASON,              §
                                    §
          Appellant,                §
                                    §
*versus*                            §        CIVIL ACTION NO. 4:23-CV-319
                                    §
DILLON INVESTMENTS, LLC,            §
                                    §
          Appellee.                 §

### MEMORANDUM AND ORDER

Pending before the court is Appellee Dillon Investments, LLC's ("Dillon") Motion to Dismiss Appeal (#2).  Dillon seeks to dismiss Appellant Morgan Milicent Mason's ("Mason") appeal from two orders issued by the United States Bankruptcy Court for the Eastern District of Texas ("Bankruptcy Court") in Adversary Proceeding No. 20-04099 (the "Adversary Proceeding"):  (1) an Order Denying Mason's Motion for Dismissal or, Alternatively, for Abstention, and (2) an Order Denying Mason's Motion for Reconsideration of Order on Motion for Dismissal or, Alternatively, for Abstention.  Mason filed a response (#6), and Dillon filed a reply (#8).  Having considered the motion, the submissions of the parties, and the applicable law, the court is of the opinion that the motion should be granted and this appeal should be dismissed for lack of subject matter jurisdiction.

I.     Background

On April 13, 2018, Mason filed her voluntary petition for Chapter 7 bankruptcy in Case No. 18-40776 (the "Bankruptcy Case") in the Bankruptcy Court.  Subsequently, Christopher Moser ("Trustee") was appointed to serve as the trustee of Mason's bankruptcy estate.  On April 27, 2018, Mason filed her Schedules and Statement of Financial Affairs in the Bankruptcy Case,

which required her to list and describe her assets, including "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." In both her Schedules and her Statement of Financial Affairs, Mason failed to disclose her personal injury claims against Dillon, which arose from injuries that Mason allegedly sustained nearly a year earlier when she purportedly fell in the shower of a Super 8 hotel operated by Dillon. On July 20, 2018, pursuant to 11 U.S.C. § 727, the Bankruptcy Court entered an Order of Discharge in Mason's Bankruptcy Case. The Trustee completed his Report of No Distribution on December 4, 2018, and Mason's Bankruptcy Case was closed the following day.

On June 13, 2019, Mason filed suit against Dillon in the 160th District Court of Dallas County, Texas. In the lawsuit, styled *Mason v. Dillon Investments, LLC d/b/a Super 8 Addison*, No. DC-19-08603 (the "State Court Lawsuit"), Mason's petition asserted claims against Dillon for negligence, respondeat superior, *res ipsa loquitur*, and related damages arising from the injuries that she allegedly sustained on June 30, 2017, at Dillon's Super 8 hotel.

After filing her State Court Lawsuit, Mason filed a Motion to Reopen the Bankruptcy Case on July 3, 2020, seeking to amend her Schedules, inform the Trustee of her personal injury claims, and allow the Trustee to administer her claims. The Bankruptcy Court granted her motion on August 13, 2020, and Mason filed Amended Schedules identifying her claims against Dillon. In response, on October 29, 2020, Dillon filed a Proof of Claim in the Bankruptcy Case, seeking to invoke the doctrine of judicial estoppel. In particular, Dillon's Proof of Claim asserted that Mason should be judicially estopped from recovering on her personal injury claims in the State Court Lawsuit because she failed to list her claims against Dillon in her original Schedules and Statement of Financial Affairs.

2

On November 11, 2020, Dillon initiated the Adversary Proceeding by filing its Adversary Complaint for Declaratory Judgment in the Bankruptcy Court.  In its adversary complaint, Dillon again sought to invoke the doctrine of judicial estoppel on the grounds that Mason had failed to list her claims against Dillon in her original Schedules and Statement of Financial Affairs in the Bankruptcy Case.  In response, on December 14, 2020, Mason filed her Motion for Dismissal Under Fed. R. Civ. P. 12(b)(1), (b)(6), (c), and Comity, or, Alternatively, for Abstention Pursuant to 28 U.S.C. §§ 1334(c)(1) and (2) ("Dismissal/Abstention Motion") in the Adversary Proceeding.  In particular, Mason argued that "[t]he State Court is the proper tribunal for final adjudication of the claims and causes of action in the State Court Lawsuit, and any defenses thereto."  In other words, Mason argued that the Bankruptcy Court should either dismiss or abstain from hearing the Adversary Proceeding so that the State Court could determine the issue of judicial estoppel as to Mason.  Dillon filed a response on December 24, 2020, and Mason filed her reply on January 14, 2021.

On January 18, 2023, the Bankruptcy Court held a hearing wherein it orally denied Mason's Dismissal/Abstention Motion.  The Bankruptcy Court explained that "the issue of distribution to the debtor will be an issue that will be taken up at this court if the estate is successful in obtaining a judgment in the underlying state court action."  The following day, the Bankruptcy Court entered an Order denying Mason's Dismissal/Abstention Motion ("Dismissal/Abstention Order").  Mason then filed a Motion for Reconsideration of the Dismissal/Abstention Order ("Reconsideration Motion") on February 2, 2023, and the Bankruptcy Court held a hearing on March 21, 2023, wherein it orally denied Mason's Reconsideration

Motion.  The Bankruptcy Court memorialized its oral denial of Mason's Reconsideration Motion in an Order entered on March 28, 2023 ("Reconsideration Order").

Around the time that Mason filed her Dismissal/Abstention Motion, the Trustee filed an amended petition in the State Court Lawsuit, substituting himself as the proper plaintiff.  As a result, Mason is no longer a party to the State Court Lawsuit.  Dillon later filed an answer to the amended petition, asserting the defense of judicial estoppel against the Trustee in the State Court Lawsuit.  Notably, Dillon's answer did not assert the defense of judicial estoppel against Mason, as she was no longer a party to the lawsuit.

Subsequently, Mason filed her Notice of Appeal (#1) on April 11, 2023, seeking review of the Bankruptcy Court's Dismissal/Abstention Order and Reconsideration Order (collectively, the "Orders").  Mason did not file a motion for leave to appeal the Orders.  On April 25, 2023, Mason filed her Statement of the Issues and Designation of Items for Inclusion in the Appellate Record (#3).  Dillon then filed the current motion on May 16, 2023, arguing that this court should dismiss Mason's appeal because it does not have appellate jurisdiction to review the Bankruptcy Court's interlocutory Orders.  Mason filed a response on May 30, 2023, contending that the court has jurisdiction to review the Orders under the collateral order doctrine.  Alternatively, if the Orders are deemed interlocutory, Mason requests that the court treat her Notice of Appeal as a motion for leave to appeal pursuant to Federal Rule of Bankruptcy Procedure 8004(d) and grant leave for consideration of the Orders.  Dillon filed a reply on June 6, 2023.

II.   Analysis

The statutory authority for this court's appellate jurisdiction in bankruptcy cases is found in 28 U.S.C. § 158, which reads as follows:

(a) The district courts of the United States shall have jurisdiction to hear appeals

    (1) from final judgments, orders, and decrees;

    (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

    (3) with leave of the court, from other interlocutory orders and decrees;

of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158.  An order is appealable under 28 U.S.C. § 158(a) only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," or if it falls into a narrow exception of appealable interlocutory orders.  *Catlin v. United States*, 324 U.S. 229, 233 (1945).  In the bankruptcy context, orders are considered "final" when they "definitively dispose of discrete disputes within the overarching bankruptcy case."  *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. ___, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)).  Although finality in the bankruptcy context is more flexible than the traditional understanding of "finality," in that a bankruptcy court can "resolve discrete controversies definitively while the umbrella bankruptcy case remains pending," *id.* at 587, this additional flexibility does not dispose of the importance of avoiding "having a case make two complete trips through the appellate process."  *In re Frontier Props., Inc.*, 979 F.2d 1358, 1363 (9th Cir. 1992) (quoting *In re Vylene Enters.*, 968 F.2d 887, 895 (9th Cir. 1992)).

    A.    <u>Collateral Order Doctrine</u>

    Mason contends that the Bankruptcy Court's Orders are reviewable as "final orders" because they "meet the requirements of the collateral order doctrine."  The collateral order

doctrine "applies to only 'a small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final.'" *In re Tullius*, 500 F. App'x 286, 291 (5th Cir. 2012) (citing *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 130 (2009)).  The doctrine is thus "best understood not as an exception to the 'final decision' rule . . . but as a 'practical construction' of it." *In re Royce Homes LP*, 466 B.R. 81, 91 (S.D. Tex. 2012) (quoting *Martin v. Halliburton*, 618 F.3d 476, 482 (5th Cir. 2010)).  Under the collateral order doctrine, "[c]ertain collateral orders are reviewable immediately" if the orders:  "(1) determine conclusively the disputed issue; (2) resolve an issue that is separable completely from the merits of the action; (3) effectively would be unreviewable on appeal from a final judgment; and (4) are too important to be denied review." *In re Rupp & Bowman Co.* ("*Rupp*"), 109 F.3d 237, 240 (5th Cir. 1997) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)); *In re SBMC Healthcare, LLC*, 547 B.R. 661, 678 (S.D. Tex. 2016).

### 1.     Conclusively Determined the Disputed Issue

First, Mason asserts that the Orders conclusively determined the issues of dismissal and abstention because the Bankruptcy Court "specifically denied such request[s]."  Dillon does not dispute this element of the collateral order doctrine analysis.  Indeed, the Bankruptcy Court's denial of Mason's Reconsideration Motion demonstrates that it will not revisit the issues of dismissal and abstention.  Thus, the court agrees that the Orders conclusively determined the issues of dismissal and abstention, satisfying the first element of the collateral order doctrine analysis.

2.    <u>Separable from the Merits of the Action</u>

Second, Mason contends that the dismissal and abstention issues meet the separability prong.  Specifically, Mason maintains that the issues of dismissal and abstention are separable from (1) the merits of the underlying personal injury claims in the State Court Lawsuit, and (2) Dillon's assertions of judicial estoppel.  In response, Dillon retorts that the Orders are not separable because it is irrelevant whether the dismissal and abstention issues are separable from the merits of the underlying claims in the State Court Lawsuit.  The court agrees with Dillon that the separability analysis in this case is not concerned with whether the dismissal and abstention issues are separable from the parallel litigation in the State Court Lawsuit.  Nevertheless, Dillon fails to address Mason's second argument that the dismissal and abstention issues are separable from the merits of its assertion of judicial estoppel in the Adversary Proceeding.

Importantly, "[i]ssues are not separate 'where they are but steps towards [a] final judgment in which they will merge.'"  *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 174 (5th Cir. 2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).  "The question of separability turns on whether the matter at issue 'is significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits.'"  *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 749 (5th Cir. 2014) (quoting *Johnson v. Jones*, 515 U.S. 304, 314 (1995)).  Notably, the United States Court of Appeals for the Fifth Circuit has previously considered a mandatory abstention issue to be separable from the merits of an underlying bankruptcy action.  *See Rupp*, 109 F.3d at 240 ("[T]he abstention issue is separable completely from the merits of the action . . . .").

Here, the merits of the underlying action—the Adversary Proceeding—concern Dillon's effort to invoke judicial estoppel against Mason.  In the event that the Trustee obtains a judgment against Dillon in the State Court Lawsuit, Dillon seeks to preclude Mason from receiving any excess funds through the "waterfall" distribution of the estate's property under 11 U.S.C. § 726.[1] In contrast, the Orders involve the propriety of the Bankruptcy Court's exercise of jurisdiction over the Adversary Proceeding, not the merits of the judicial estoppel issue itself.[2]  Indeed, the Orders do not address the elements of judicial estoppel or otherwise provide any analysis of judicial estoppel in this case.  Accordingly, the Orders resolve an issue of jurisdiction, which is separable from the merits of the Adversary Proceeding.  Although Dillon correctly asserts that the separability analysis is solely focused on the merits of the Adversary Proceeding, it nevertheless

---

[1] 11 U.S.C. § 726 governs the distribution of property of the bankruptcy estate.  Generally, after payments to any creditors are satisfied, the statute permits the debtor to receive any excess funds.  *See* 11 U.S.C. § 726(a)(6).

[2] Specifically, Mason's Dismissal/Abstention Motion and Reconsideration Motion (collectively, the "Motions") argued for dismissal of the Adversary Proceeding under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) (or for judgment on the pleadings under Rule 12(c)) on the grounds that "[t]he plucking of the affirmative defense and conversion of the piece of litigation into a declaratory judgment action does not create a case or controversy."  Mason's Motions further contended that the Adversary Proceeding should be dismissed on the basis of comity in order to "prevent duplicative litigation" because "the judicial estoppel defense is pending in State Court."

In addition, Mason's Motions sought for the Bankruptcy Court to decline to exercise jurisdiction pursuant to either 28 U.S.C. § 1334(c)(2), which governs mandatory abstention, or 28 U.S.C. § 1334(c)(1), which governs permissive abstention.  Mason's mandatory abstention argument hinged on the following assertions:  (1) the Adversary Proceeding has no independent basis for federal jurisdiction other than under 28 U.S.C. § 1334(b), which governs the bankruptcy courts' original but not exclusive jurisdiction in matters "arising in or relating to" bankruptcy cases; (2) the Adversary Proceeding is not a "core" bankruptcy proceeding; (3) the judicial estoppel issue is already pending before the State Court in the State Court Lawsuit; and (4) the judicial estoppel issue as to Mason could be timely adjudicated in the State Court Lawsuit.  Finally, Mason's Motions contended that, in the alternative, the Bankruptcy Court should abstain under the permissive abstention doctrine for a number of reasons.  Essentially, Mason argued that "the Adversary includes a claim that is subject to [the State Court's] jurisdiction and any decision [by the Bankruptcy Court] will not only affect the ultimate trial in [the State Court] and significantly prejudice [Mason], but would also limit [Mason's] right to a jury trial."

ignores that the issues contemplated by the Orders—dismissal and abstention, which relate to the Bankruptcy Court's jurisdiction over the Adversary Proceeding—are separable from the underlying merits of Dillon's judicial estoppel claim against Mason.  As a result, the Orders satisfy the second prong of the collateral order doctrine analysis.

### 3.   Effectively Unreviewable on Appeal from a Final Judgment

Third, Mason makes several arguments as to why she believes that the Orders will be effectively unreviewable on appeal from a final judgment.  "The effectively unreviewable prong hinges on 'whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order.'"  *Tracy v. Lumpkin*, 43 F.4th 473, 476 (5th Cir. 2022) (quoting *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449 (5th Cir. 2019)); *see Leonard v. Martin*, 38 F.4th 481, 486 (5th Cir. 2022) (quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994)).  As the Fifth Circuit has noted, "[t]his prong is narrow, however, because 'almost every . . . order might be called "effectively unreviewable" in the sense that relief from error can never extend to rewriting history.'"  *Id.* (quoting *Digit. Equip. Corp.*, 511 U.S. at 872).  Notably, "a court must make this [unreviewability] determination 'on a categorical basis, looking only at whether "the class of claims, taken as a whole, can be vindicated by other means" than immediate appeal.'"  *Leonard*, 38 F.4th at 486 (quoting *Martin*, 618 F.3d at 483).

Here, Mason specifically maintains that the Bankruptcy Court's decision not to abstain will be unreviewable on appeal from a final judgment.[3]  The Fifth Circuit has explicitly held, however, that a bankruptcy court's refusal to abstain is not a decision that is rendered unreviewable on appeal.  *See Rupp*, 109 F.3d at 240.  As the court explained:

> We see no reason why the decision would be effectively unreviewable on appeal.  Unlike the reverse situation in which the bankruptcy court *abstains* and is then bound as a matter of *res judicata* to honor the judgment of the Michigan state court, thus rendering the abstention decision effectively unreviewable on appeal, the instant case poses no such concerns.  Rather, once the bankruptcy court renders a final judgment . . . the [appellants] will be free to appeal that decision and to challenge the appropriateness of the decision not to abstain.  Although we acknowledge that delaying review of the abstention decision until such time may cause the [appellants] and the Debtor additional litigation-related expenses, we do not view such delays as sufficient to convey jurisdiction under the collateral order doctrine.

*Id.* (internal citation omitted).  *Rupp* thus indicates that a bankruptcy court's refusal to abstain is among " 'the class of claims, taken as a whole, [that] can be vindicated by other means' than immediate appeal."  *Leonard*, 38 F.4th at 486 (quoting *Martin*, 618 F.3d at 483).  Accordingly, a bankruptcy court's refusal to abstain can be properly reviewed on appeal from a final judgment.

_____

[3] Mason does not seem to assert the same mootness argument as to the other issues of dismissal for lack of subject matter jurisdiction, dismissal for failure to state a claim, dismissal on the basis of comity, or for judgment on the pleadings.  Indeed, such issues are typically reviewable on appeal from a final judgment.  *See Digit. Equip. Corp.*, 511 U.S. at 873 (explaining that allowing immediate appeal of "motions [that] can be made in virtually every case," including "merely that the complaint fails to state a claim," would result in "damage to the efficient and congressionally mandated allocation of judicial responsibility"); *In re Greene Cnty. Hosp.*, 835 F.2d 589, 596 (5th Cir. 1988) (holding that the appeal of the bankruptcy court's order denying a motion to dismiss for lack of subject matter jurisdiction "fails under the third prong of [the collateral order doctrine] test" because "[t]he question of subject matter jurisdiction is far from unreviewable on appeal from a final judgment"); *In re Smith*, No. SA-21-CV-1047-JKP, 2023 WL 2544339, at *5 (W.D. Tex. Mar. 16, 2023) ("[T]he collateral-order doctrine does not make such challenges immediately reviewable because questions of subject matter jurisdiction are reviewable following a final judgment.").

Here, as in *Rupp*, the Bankruptcy Court declined to abstain from exercising jurisdiction over the Adversary Proceeding.  Nonetheless, Mason attempts to dissuade the court from relying on *Rupp* by arguing that her case is unique due to concerns about mootness, res judicata, its alleged similarity to non-binding case law, and purported Fifth Circuit precedent.  Mason's arguments, however, are unavailing.

a.    Mason's Mootness Argument

Mason first asserts that the Bankruptcy Court's abstention decision will be moot on appeal from a final judgment because the State Court Lawsuit will have already concluded by the time of the appeal.  In particular, Mason contends:

> [E]ven if [Mason] appealed the Bankruptcy Court's orders denying abstention and dismissal after the state court enters a final judgment and after the Bankruptcy Court modifies it (or not), this Court's review will have no force and effect.  Once the state court proceeding is done, this Court would have no live controversy to entertain; once the state court proceeding is done, there will be no proceeding to "abstain" in deference to, and Dillon's affirmative defense of judicial estoppel cannot be filed as a standalone claim in a new state proceeding.

Dillon counters Mason's mootness argument by emphasizing that Mason is not a party to the State Court Lawsuit, and, thus, it is inevitable that the State Court Lawsuit will "conclude without Mason."

Mason's mootness argument falls short.  For one matter, Mason does not provide any authority demonstrating that courts—in the Fifth Circuit or otherwise—have applied the collateral order doctrine to review a bankruptcy court's refusal to abstain explicitly due to concerns about mootness.  *Cf. In re Blixseth*, 539 F. App'x 703, 704 (9th Cir. 2013) (dismissing an appeal from the bankruptcy court's decision not to abstain under 28 U.S.C. § 1334(c) and citing *Confederated Salish v. Simonich*, 29 F.3d 1398, 1403 (9th Cir. 1994), for the proposition that "[o]n appeal from

11

a final judgment, a court of appeals can review a district court's refusal to abstain under *Younger*

[*v. Harris*, 401 U.S. 37 (1971)],[4] without implicating the mootness doctrine, even though the

district court has decided the merits of the case and all state proceedings have been completed").

Indeed, in *Rupp*, the defendants in the state court lawsuit moved for the bankruptcy court

to abstain from hearing the debtor's breach of contract claim so that it could be heard in the

pending state court lawsuit, which was filed before the adversary proceeding.  109 F.3d at 238.

Despite the possibility that, with both the adversary proceeding and the state court lawsuit

advancing in parallel, the state court lawsuit might conclude before a final judgment was entered

in the bankruptcy proceeding, the Fifth Circuit never discussed mootness and thus apparently

never considered the prospect of future mootness to be an issue that warranted application of the

collateral order doctrine in *Rupp*.  *See id.* at 240-41.  Accordingly, Mason's mootness argument

fails to persuade the court that the Orders would be effectively unreviewable on appeal.

b.    Mason's Res Judicata Argument

In an effort to distinguish *Rupp*, Mason maintains that the unique facts of her case

"produce an outcome where no subsequent appeal can effectively review the Bankruptcy Court's

order[s]."  Mason contends that the Bankruptcy Court's refusal to abstain will unfairly give Dillon

---

[4] Under *Younger* abstention doctrine, federal courts must abstain from exercising jurisdiction when:
"(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has
an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate
opportunity in the state proceedings to raise constitutional challenges.'"  *Daves v. Dallas County*, 64 F.4th
616, 625 (5th Cir. 2023) (quoting *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012)).

"a second bite at the affirmative defense apple"[5] because it will have the opportunity to litigate the issue of judicial estoppel in both the State Court Lawsuit and the Adversary Proceeding.  She further asserts that permitting the Bankruptcy Court to evaluate Dillon's judicial estoppel argument will result in "additional litigation as to whether or not the defense of judicial estoppel bars [Mason] from receiving excess funds from a monetary judgment in favor of the Trustee . . . notwithstanding that this decision will be covered by the final judgment entered in the State Court Lawsuit."  Mason claims that the Bankruptcy Court's assessment of the judicial estoppel issue as to Mason will run afoul of res judicata principles in that it would constitute impermissible "modification" of the State Court's final judgment, thereby disregarding "the preclusive effect of a final judgment and the limitations of another court to modify or alter that judgment once final."  In particular, Mason cites *American Contractors Indemnity Co. v. Wiggins*, No. 3:21-CV-2768-BH, 2023 WL 2652795, at *4-5 (N.D. Tex. Mar. 27, 2023)—a case that did not involve bankruptcy proceedings—seemingly for the proposition that res judicata principles render her case "extraordinary" and deserving of review under the collateral order doctrine.

---

[5] Mason repeatedly accuses Dillon of disguising its assertion of judicial estoppel against her as a claim, when it is actually an affirmative defense.  The court notes that Dillon is, in fact, seeking a declaratory judgment that Mason is judicially estopped from receiving any future recovery in the event that the Trustee obtains a favorable judgment in the State Court Lawsuit.  Several cases indicate that, through an adversary proceeding, a party may properly file a complaint seeking a declaratory judgment that a debtor is judicially estopped in some manner.  *See In re Lymon*, No. 19-1121, 2020 WL 7388073, at *6 (Bankr. E.D. La. Jan. 15, 2020) (granting the plaintiff's motion for declaratory judgment that the debtor was judicially estopped from pursuing her undisclosed personal injury claim in a state court action); *In re Howard*, No. 00-51897-NPO, 2015 WL 534559, at *3-4 (Bankr. S.D. Miss. Feb. 6, 2015) (discussing, in an adversary proceeding initiated by a complaint seeking declaratory judgment, the bankruptcy court's prior ruling that the debtor was "judicially estopped from pursuing her claims in the related proceedings"), *aff'd sub nom. Howard v. Fina Oil & Chem. Co.*, No. 1:15-cv-48-HSO-JCG, 2016 WL 164320 (S.D. Miss. Jan. 13, 2016); *In re Broussard*, 351 B.R. 383, 385, 388 (Bankr. W.D. La. 2006) (holding that the debtor was judicially estopped from asserting a personal injury claim, where the defendant in the personal injury lawsuit had filed an adversary complaint for declaratory judgment on the judicial estoppel issue).

Mason fails to show, however, that a final judgment in the State Court Lawsuit would have preclusive effect on Dillon's assertion of judicial estoppel against her in the Adversary Proceeding.

"Res judicata, also known as claim preclusion, prevents the relitigation of a claim or cause of action that was adjudicated and resolved by a final judgment, as well as all related matters that with the use of diligence could or should have been litigated in the prior suit." *Hill v. TX-AN Anesthesia Mgmt., LLP*, 443 S.W.3d 416, 424 (Tex. App.—Dallas 2014, no pet.) (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)); *McNeil Ints., Inc. v. Quisenberry*, 407 S.W.3d 381, 387 (Tex. App.—Houston [14th Dist.] July 9, 2013, no pet.).  "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Sims v. City of Madisonville*, 894 F.3d 632, 644 (5th Cir. 2018) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)); *see In re 3 Star Props., L.L.C.*, 6 F.4th 595, 604-05 (5th Cir. 2021); *Harmon v. Dallas County*, 927 F.3d 884, 890 (5th Cir. 2019); *Portillo v. Cunningham*, 872 F.3d 728, 735 (5th Cir. 2017).

"When a prior judgment is offered in subsequent litigation in which there is identity of parties, issues, and subject matter, such judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action on the theory that they have merged into the judgment." *Nat'l Union Fire Ins. Co. v. John Zink Co.*, 972 S.W.2d 839, 846 (Tex. App.—Corpus Christi 1998, pet. denied); *see Fed. Home Loan Mortg. Corp. v. Pham*, 449 S.W.3d 230, 234 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Valley Forge Ins. Co. v. Ryan*, 824 S.W.2d 236, 238 (Tex. App.—Fort Worth 1992, no writ).  Res judicata requires:  "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them;

and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Harmon*, 927 F.3d at 890 (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)); *accord Sims*, 894 F.3d at 644; *Portillo*, 872 F.3d at 735.

     i. <u>Prior Final Judgment and Identity of Parties or Those in Privity with Them</u>

   In this case, the first requirement of res judicata—"a prior final judgment on the merits by a court of competent jurisdiction"—would presumably be met after the State Court determines the issue of judicial estoppel as to the Trustee and renders a final judgment resolving the personal injury claims.  As for the second requirement—"identity of parties or those in privity with them"—Mason is no longer a party to the State Court Lawsuit.  As Dillon emphasizes, during the Bankruptcy Court's hearing on Mason's Dismissal/Abstention Motion, Mason's counsel admitted that Mason was not a party to the State Court Lawsuit and conceded that "she can't" become a party to the State Court Lawsuit.[6]  Thus, because Mason is not a party to the State Court Lawsuit, she cannot demonstrate that the Bankruptcy Court would be bound by res judicata on the judicial estoppel issue unless she, as the debtor, is considered to be in privity with the Trustee.

   Importantly, "Texas courts have been clear that there is no categorical rule for privity; instead the courts look to 'the circumstances of each case.'"  *In re 3 Star Props., L.L.C.*, 6 F.4th

---

[6] Mason is not a party to the State Court Lawsuit because she no longer owns the personal injury claims; rather, the claims belong to the bankruptcy estate, which is administered by the Trustee.  The Trustee is the real party in interest entitled to pursue the personal injury claims on behalf of the bankruptcy estate because "any causes of action belonging to the debtor are property that becomes part of the estate once the bankruptcy petition is filed," and "once a claim belongs to the estate, the trustee has exclusive standing to assert the claim."  *In re Croft*, 737 F.3d 372, 375 (5th Cir. 2013); *see Napoleon v. Shows, Cali & Walsh, LLP*, 573 F. Supp. 3d 1063, 1070 (E.D. La. 2021) ("[A] debtor loses all rights to assets that are a part of the bankruptcy estate unless the estate abandons the asset.").  Here, the Trustee filed an amended petition that substituted himself as the proper plaintiff in the State Court Lawsuit, demonstrating that the bankruptcy estate has not abandoned the asset of the personal injury claims against Dillon.

at 606 (quoting *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007)). "[T]wo parties are said to be in privity when they share an 'identity of interests in the basic legal right that is the subject of litigation.'"  *In re Erlewine* ("*Erlewine*"), 349 F.3d 205, 210 (5th Cir. 2003) (quoting *Amstadt*, 919 S.W.2d at 653); *see Johnston v. Dexel*, 373 F. Supp. 3d 764, 789 (S.D. Tex. 2019).  "A party can be in privity in at least three ways:  (1) it can control an action even if it is not a party to it; (2) its interests can be represented by a party to the action; or (3) it can be a successor-in-interest, deriving its claim through a party to the prior action."  *Samuel v. Fed. Home Loan Mortg. Corp.*, 434 S.W.3d 230, 234-35 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Amstadt*, 919 S.W.2d at 653).

In the typical context of debtors and trustees,  "[w]hile it is true that a trustee is in many respects a successor in interest of a debtor, a bankruptcy trustee is also a general representative of the creditors and is often required to take a position adverse to that of a debtor."  *In re Ocean Tower LP*, No. 11-70776, No. 13-07026, 2014 WL 6686542, at *3 (Bankr. S.D. Tex. Nov. 25, 2014).  *Compare* 3 COLLIER ON BANKRUPTCY ¶ 323.02[1], LexisNexis (database updated June 2023) ("The trustee does not represent the debtor and does not owe the debtor any fiduciary duty."), *with* 1 BANKRUPTCY LAW MANUAL § 4:7 (5th ed.), Westlaw (database updated June 2023) ("The trustee owes no fiduciary duty to a debtor where the estate is insolvent, but may owe such duties to the debtor where the estate is solvent.").  In *Erlewine*, for example, the Fifth Circuit determined that, where the debtor was subject to a prior divorce decree that governed the distribution of marital property, the trustee of the bankruptcy estate was not in privity with the debtor because "[t]he interests of the Debtor in the divorce proceeding and of the Trustee in the instant case" were "quite distinct."  349 F.3d at 210.  The court explained that the trustee was

16

"much more" than a mere "successor of the [debtor] . . . . in both the extraordinary rights with which the Bankruptcy Act invests him, and as a general representative of the creditors." *Id.* (quoting *Coleman v. Alcock*, 272 F.2d 618, 621-33 (5th Cir. 1959)).  As a result, the divorce decree's terms governing the distribution of marital property did not preclude the trustee from recovering assets from the debtor's former husband.  *Id.*

In the case at bar, Mason does not explain how she is purportedly in privity with the Trustee.  The court recognizes, however, that Mason and the Trustee appear to share a common interest in "the basic legal right that is the subject of the litigation" in the State Court Lawsuit—namely, the Trustee's ability to recover on the personal injury claims on behalf of the bankruptcy estate.  *Erlewine*, 349 F.3d at 205, 210.  The Trustee seeks to overcome Dillon's assertion of judicial estoppel in the State Court Lawsuit in order to obtain a favorable judgment on behalf of those who have the right to receive distributions from the bankruptcy estate.  Thus, the Trustee's interest in the State Court Lawsuit necessarily encompasses Mason's interest in the Adversary Proceeding of recovering any surplus funds from the State Court judgment after her creditors' claims have been satisfied.[7]

Although Dillon relies upon *Erlewine* to support its assertion that the Trustee and Mason are not in privity, the present case seems to be distinguishable.  In *Erlewine*, the debtor—not the trustee—was the party involved in the prior proceeding with the potential for preclusive effect.  *Id.* at 210.  Because the debtor had represented only her personal interests in the divorce proceeding, and not the interests of the entire bankruptcy estate that the trustee was required to

---

[7] Generally, after payments to any creditors are satisfied, 11 U.S.C. § 726(a)(6) permits the debtor to receive any excess funds.  *See* 11 U.S.C. § 726(a)(6).

17

represent, the debtor and the trustee were not in privity.  *See id.*  Here, in contrast, the Trustee—the party participating in the State Court Lawsuit, the relevant initial proceeding with the potential for preclusive effect—represents the interests of all who have the potential to receive distributions from the bankruptcy estate, which necessarily includes Mason.  *See Samuel*, 434 S.W.3d at 235 (explaining that privity can be established where a nonparty's "interests can be represented by a party to the action").  Thus, although Mason is not a party to the State Court Lawsuit, Mason could likely meet the second requirement of res judicata by demonstrating that she is in privity with the Trustee.

### ii.   The Same Claims as Were Raised or Could Have Been Raised in the First Action

Nevertheless, Mason could not satisfy the third requirement of res judicata—"a second action based on the same claims as were raised or could have been raised in the first action."[8] Mason cannot demonstrate that the declaratory judgment that Dillon seeks in the Adversary Proceeding is "based on the same claims as were raised or could have been raised" in the State Court Lawsuit because such an argument would disregard the fundamental distinction between the theories of judicial estoppel that are at issue in the State Court Lawsuit and the Adversary Proceeding.

In the State Court Lawsuit, Dillon asserts judicial estoppel as an affirmative defense against the Trustee's ability to pursue the personal injury claims on behalf of the bankruptcy estate.  In

---

[8] For one matter, as the court has already discussed at length, Mason is not a party to the State Court Lawsuit.  Despite Mason's bald assertion that "any 'claim' against the Debtor should be brought in the State Court Lawsuit and Dillon could easily join the Debtor to the action on such grounds," Mason fails to explain under which procedural mechanism she should be joined to the State Court Lawsuit, considering that she no longer "owns" the personal injury claims that the Trustee has elected to pursue on behalf of the bankruptcy estate.  *See In re Croft*, 737 F.3d at 375; *Napoleon*, 573 F. Supp. 3d at 1070.

contrast, in the Adversary Proceeding, Dillon seeks a declaratory judgment that Mason, as the debtor, is judicially estopped from recovering any proceeds from a judgment that the Trustee might obtain in the State Court Lawsuit.  Such issues are markedly distinct from one another. Indeed, while the Trustee can likely avoid the implications of judicial estoppel merely by demonstrating that he is an "innocent trustee," Mason's hurdles are much steeper.

In federal court,[9] an "innocent trustee"—a trustee who is unaware of the debtor's undisclosed claim and thus cannot be held responsible for the debtor's concealment or failure to disclose—generally is not estopped from pursuing a claim on behalf of the bankruptcy estate, even in situations where the debtor who failed to disclose a prior judgment or potential claim is estopped.  *See Reed v. City of Arlington*, 650 F.3d 571, 573, 579 (5th Cir. 2011) (establishing the "general rule" that, "[a]bsent unusual circumstances, an innocent bankruptcy trustee may pursue for the benefit of creditors a judgment or cause of action that the debtor—having concealed that

---

[9] Notably, many Texas courts apply federal principles of judicial estoppel when the original proceeding involves bankruptcy.  *See Paine ex rel. Stephen B. Paine Fam. Tr. v. Golden*, No. 01-21-00399-CV, 2023 WL 4110841, at *14 (Tex. App.—Houston [1st Dist.] June 22, 2023, no pet. h.) ("Because the issue in this case arises from a bankruptcy context, we look to federal law to determine whether judicial estoppel applies."); *Spartan Tex. Six Cap. Partners, Ltd. v. Perryman*, 494 S.W.3d 735, 748 (Tex. App.—Houston [14th Dist.] 2016) ("Federal law applies to judicial estoppel issues when the first proceeding involved bankruptcy." (citing *Bailey v. Barnhart Int., Inc.*, 287 S.W.3d 906, 909 (Tex. App.—Houston [14th Dist.] 2009, no pet.))), *aff'd as modified on other grounds*, 546 S.W.3d 110 (Tex. 2018); *Siller v. LPP Mortg., Ltd.*, No. 04-11-00496-CV, 2013 WL 1484506, at *4 (Tex. App.—San Antonio Apr. 10, 2013, pet. denied) ("A majority of Texas courts do apply federal judicial estoppel law when the prior proceeding was in bankruptcy court."); *Norris v. Brookshire Grocery Co.*, 362 S.W.3d 226, 229 (Tex. App.—Dallas 2012, pet. denied) ("Because [the appellee] invoked judicial estoppel in the context of a prior bankruptcy proceeding involving [the appellant's] duty under the bankruptcy code, we apply federal law to determine whether the doctrine applies here." (citing *Cricket Commc'ns, Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298 (Tex. App.—Dallas 2007, no pet.))); *Bailey*, 287 S.W.3d at 913 (determining that the bankruptcy trustee could pursue the debtor's claims on behalf of the debtor's creditors "even if [the debtor] would have been judicially estopped to pursue them herself").  Here, the judicial estoppel issue certainly "arises from a bankruptcy context," in that Dillon's assertion of judicial estoppel stems from Mason's failure to include her claims against Dillon in the original Schedules and Statement of Financial Affairs that she filed in her Bankruptcy Case.

asset during bankruptcy—is himself estopped from pursuing"); *see also United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 276 (5th Cir. 2015); *Carter v. Rollie Transp., Inc.*, No. 4:21-cv-01382-O, 2023 WL 137488, at *6 (N.D. Tex. Jan. 9, 2023).  The Fifth Circuit generally disallows the use of judicial estoppel against "innocent trustees" in order to uphold "one of the core goals of the bankruptcy system—obtaining a maximum and equitable distribution for creditors" while also avoiding "unnecessarily 'vaporizing' the assets effectively belonging to innocent creditors."  *Reed*, 650 F.3d at 576 (quoting *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006)); *see In re Parker*, 789 F. App'x 462, 464 (5th Cir. 2020); *Carter*, 2023 WL 137488, at *7.

Thus, in assessing the affirmative defense of judicial estoppel against the Trustee, the State Court will not be required to consider Mason's motivations or reasons for failing to disclose the claims.  Rather, the State Court's only pertinent inquiry regarding Mason will be to determine the objective fact of whether Mason failed to disclose the personal injury claims in her original Schedules and Statement of Financial Affairs.  In other words, the State Court will have no occasion or authority to consider whether Mason herself should be judicially estopped from receiving any potential funds from the State Court Lawsuit.

In contrast, when evaluating whether judicial estoppel should apply against a debtor, courts in the Fifth Circuit consider, *inter alia*,[10] whether "the party to be estopped acted inadvertently."

---

[10] In total, when deciding whether a party should be judicially estopped, courts in the Fifth Circuit consider whether:  "(i) the position of the party to be estopped is clearly inconsistent with its previous one; (ii) the party to be estopped convinced the court to accept that previous position; and (iii) the party to be estopped acted inadvertently."  *In re Blanco*, 633 B.R. 714, 734 (Bankr. S.D. Tex. 2021) (citing *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012)).  Some courts also consider "whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *In re Hollie*, 622 B.R. 221, 234 (Bankr. S.D. Tex. 2020) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)); *see In re Blanco*, 633 B.R. at 734.

*In re Blanco*, 633 B.R. at 734 (citing *Love*, 677 F.3d at 261).   "In bankruptcy, 'the debtor's failure to satisfy its statutory disclosure duty is "inadvertent" only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'"   *Id.* (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999)); *see Allen v. C&H Distrib., L.L.C.*, 813 F.3d 566, 573 (5th Cir. 2015).   Thus, the judicial estoppel issue as to Mason will hinge on her ability to prove that her failure to disclose her claims against Dillon was "inadvertent"—a requirement that the Trustee will not be obligated to show in the State Court Lawsuit.   As a result, Mason cannot show that this critical element of inadvertence will be adjudicated or should be adjudicated in the State Court Lawsuit.   The determination of whether judicial estoppel bars the Trustee from pursuing the personal injury claims in the State Court Lawsuit necessarily involves a different analysis than whether Mason, as an unforthcoming debtor, is judicially estopped from recovering any proceeds from the State Court Lawsuit.

Indeed, the Bankruptcy Court cast this distinction in no uncertain terms during the hearing on Mason's Dismissal/Abstention Motion:

> The issue of whether the lawsuit can proceed or should proceed in the state court because the Trustee is judicially estopped may be an issue that is addressed to the State Court.  But the issue of whether the debtor will receive a distribution in this case and is otherwise judicially estopped from receiving a distribution in this case is a matter for this Court to decide.

Taking the differing applications of judicial estoppel as to an innocent trustee and an unforthcoming debtor into account, if the State Court holds that the Trustee is able to pursue the personal injury claims and the Trustee then obtains a favorable judgment against Dillon in the State Court Lawsuit, the Bankruptcy Court's subsequent consideration of whether Mason may recover any part of that judgment will not, as Mason contends, improperly "modify or alter" the State

Court's final judgment.  In fact, the Bankruptcy Court's evaluation of judicial estoppel as applied to Mason will neither reconsider the State Court's determination of judicial estoppel as applied to the Trustee nor modify any judgment on the merits of the negligence claims at the heart of the State Court Lawsuit.  Instead, the Bankruptcy Court will assess only whether Mason's failure to disclose the personal injury claims on her original Schedules and Statement of Financial Affairs bars her—and her alone—from recovering any portion of this hypothetical judgment.  Thus, the State Court and the Bankruptcy Court will engage in two different analyses as to two separate parties.[11]  Accordingly, Mason cannot establish that the Adversary Proceeding is "based on the same claims as were raised or could have been raised" in the State Court Lawsuit, and she therefore cannot rely on res judicata principles to argue that her case presents extraordinary circumstances that warrant review under the collateral order doctrine.

c.   Mason's Reliance on Non-Binding, Inapposite Cases

In yet another attempt to distinguish *Rupp*, Mason relies on non-binding, inapposite cases, contending that her situation presents "extraordinary circumstances" that warrant relief under the collateral order doctrine because "allowing a bankruptcy court to modify a state court final judgment" would "raise[ ] significant federalism, preclusion, and res judicata concerns."  To that end, Mason chiefly relies on *Mt. McKinley Insurance Co. v. Corning Inc.* ("*Mt. McKinley*"), 399

---

[11] The court observes that the Fifth Circuit has previously rejected application of the collateral order doctrine where both a federal case and a state case are currently pending, but "the issues before the federal and state courts are not identical," such that "[r]esolution of the state case will not 'necessarily terminat[e] the federal case.'" *Grace v. Vannoy*, 826 F.3d 813, 817 (5th Cir. 2016) (quoting *Kershaw v. Shalala*, 9 F.3d 11, 14 n.4 (5th Cir. 1993)) (declining to extend collateral order review to the district court's stay of the prisoner's federal habeas petition, where the federal court issued the stay to permit the prisoner to exhaust newly discovered habeas claims in state court before returning to federal court to pursue his federal habeas claims).  Thus, the fact that the State Court Lawsuit and the Adversary Proceeding involve separate issues and different parties further cements the conclusion that review of the Orders under the collateral order doctrine is not warranted.

F.3d 436 (2d Cir. 2005). *Mt. McKinley* arose from parallel litigation in a New York district court removal case and a Pennsylvania bankruptcy case, wherein both courts were presented with identical issues:  determining whether certain insurers were required to provide coverage for a policyholder's defense to underlying asbestos litigation. *Id.* at 439-40.  After denying a motion to remand, or in the alternative, to abstain, the New York district court observed that the relevant claims before it "duplicate[d]" those in the Pennsylvania proceedings and accordingly stayed its action pending resolution of the Pennsylvania bankruptcy case. *Id.* at 441.  On appeal, the Second Circuit applied the collateral order doctrine to review the New York court's interlocutory order denying abstention because "the claim preclusive effect of the Pennsylvania court's judgment would bar further litigation in the [New York district court]," as the New York court would have been bound by the Pennsylvania court's judgment. *Id.* at 443-44.  As a result, if the Second Circuit had declined to take up the case until it was appealed after a final judgment, the Second Circuit would have been constrained to "review[ing] only whether the [New York district court] ultimately made the correct judgment on claim preclusion and not whether it correctly abstained as an initial matter." *Id.*[12]

---

[12] The Second Circuit was also persuaded to apply the collateral order doctrine out of concern that the New York district court's order decided "whether a state or federal forum will determine" the "merits of [this] dispute." *Id.* at 439, 444 (quoting *Minot v. Echardt-Minot*, 13 F.3d 590, 593 (2d Cir. 1994)). Mason asserts that a similar issue as to "which court will hear and determine the affirmative defense of judicial estoppel and its application as to [Mason]" is present in her case. Mason ignores, however, that she is not a party to the State Court Lawsuit, and there is, at present, no mechanism for the State Court to determine the merits of judicial estoppel as to Mason. Indeed, as discussed above, the issue before the State Court—whether the Trustee is judicially estopped from pursuing the personal injury claims on behalf of the bankruptcy estate—and the issue before the Bankruptcy Court—whether Mason is judicially estopped from receiving any proceeds of a potential judgment in the Trustee's favor in the State Court—involve different analyses. *See Reed*, 650 F.3d at 573.

As Dillon points out, the Second Circuit has since distinguished its decision in *Mt. McKinley*.  *See Ashmore v. CGI Grp., Inc.*, 860 F.3d 80, 89 (2d Cir. 2017) (dismissing appeal after declining to apply the collateral order doctrine).  In *Ashmore*, the Second Circuit declined to follow *Mt. McKinley*, emphasizing that it "was not an ordinary case" because it involved an "inevitable limitation to [the Second Circuit's] appellate review."  *Id.* (citing *Mt. McKinley*, 399 F.3d at 444).  In essence, the Second Circuit's concern in *Mt. McKinley* was that, without subjecting the New York district court's order denying abstention to immediate review under the collateral order doctrine, the Second Circuit would have never had an opportunity to review the abstention decision.  *See id.* (citing *Mt. McKinley*, 399 F.3d at 444).

Unlike *Mt. McKinley*, the present case presents no such res judicata concerns.  No similar preclusion issues threaten to render the Bankruptcy Court's refusal to abstain effectively unreviewable on appeal from a final judgment, as the State Court Lawsuit and the Adversary Proceeding do not involve identical issues.  Instead, once the State Court Lawsuit concludes, the Bankruptcy Court will engage in its own, independent analysis of the separate issue of judicial estoppel as to Mason; it will not be constrained merely to applying a claim preclusion analysis.  As a result, once the Bankruptcy Court renders a final judgment, this court's appellate review will not be cabined to considering solely the propriety of the Bankruptcy Court's decision as to claim preclusion.  Accordingly, there is no possibility that denying review of the Orders at this juncture will result in the State Court's final judgment having a preclusive effect that would "bar further litigation" in the Bankruptcy Court, as was the concern in *Mt. McKinley*.  399 F.3d at 444.  Thus,

Mason's attempt to analogize to *Mt. McKinley* fails to demonstrate that the unreviewability prong is met in this case.[13]

  d.  <u>Mason's Reading of *Reed*</u>

   In her final attempt to argue that the Orders would be effectively unreviewable on appeal from a final judgment, Mason claims that *Reed* constitutes "binding Fifth Circuit precedent reflecting that the affirmative defense [of judicial estoppel] should be tried at the trial court level." *See Reed*, 650 F.3d at 571.  Mason apparently bases this assertion on language in *Reed* stating that judicial estoppel barred the debtor from recovery, even though the debtor was not a party to the lawsuit.  Specifically, Mason notes that, in affirming the district court's opinion, the Fifth Circuit cited with approval the remedy fashioned by the district court:

> [The debtor] was estopped from collecting or receiving any money from the judgment against the [defendant].  The Trustee, however, would be free to collect

---

[13] Mason's reliance on other non-binding case law is similarly unavailing.   For instance, while Mason cites *In re Jackson Brook Institute, Inc.*, 227 B.R. 569, 579 (D. Me. 1998), for the proposition that the "[a]nalysis of whether an order meets the unreviewability prong entails an inquiry into the effect of a lower court's order under the circumstances of the particular case," she apparently overlooks the fact that the United States District Court for the District of Maine declined to apply the collateral order doctrine to review the appeal in that case.  *Id.* at 581.  Mason also cites *In re RBGSC Investment Corp.*, 253 B.R. 369 (E.D. Pa. 2000), *overruled on other grounds by In re Exide Technologies*, 544 F.3d 196 (3d Cir. 2008), which contemplates a procedural scenario entirely inapplicable to her own.  In *In re RBGSC Investment Corp.*, the district court determined that the bankruptcy court's order denying a motion to remand would be effectively unreviewable on appeal from a final judgment because the district court knew with certainty that the issues surrounding the denial of remand were not addressed in the appeal from the bankruptcy court's final judgment.  *Id.* at 376-77.  Specifically, in the interim period between when the appellants appealed the bankruptcy court's order denying remand and when the district court considered that appeal, the bankruptcy court issued a final order, which the appellants also appealed.  *Id.* at 376.  Notably, the appellants' appeal from the final order "[did] not include the question of remand."  *Id.* at 376-77.  As a result, the district court applied the following logic in agreeing to review the ordering denying remand under the collateral order doctrine:  "to find that we have no jurisdiction based upon the theory that the Appellants can raise the issue in a subsequent appeal—something we know they have not done, and therefore cannot do—would work an injustice."  *Id.* at 377.  Here, Mason's case presents no such remarkable quandary, as, to this court's knowledge, the Adversary Proceeding has not yet concluded.  Mason offers no explanation as to how *In re RBGSC Investment Corp.* otherwise lends support to her argument that the court should determine that the Orders are collateral orders meriting immediate review.

> the judgment on behalf of the estate for distribution to [the debtor's] creditors. Any remaining funds after distribution would be refunded to [the defendant], and not to [the debtor].

*Id.* at 573 (internal citations omitted) (citing *Reed v. City of Arlington*, 795 F. Supp. 2d 465, 480 (N.D. Tex. 2008), *aff'd on reh'g*, 650 F.3d at 571).

Mason's insistence that *Reed* stands for the proposition that the affirmative defense of judicial estoppel as to the debtor must be tried at the trial court level—here, by the State Court in the State Court Lawsuit—amounts to little more than cherry-picking quotations while ignoring their greater context.  Mason cannot point to any line of the Fifth Circuit's opinion in *Reed* that states that the trial court presiding over the underlying personal injury claims *must* decide the issue of judicial estoppel as to the debtor.  Indeed, the Fifth Circuit clarifies at the outset of *Reed* that the question presented for its consideration was "whether judicial estoppel bars a blameless bankruptcy trustee from pursuing a judgment that the debtor—having concealed the judgment during bankruptcy—is himself estopped from pursuing."  *Id.* at 572.  In other words, the Fifth Circuit's opinion in *Reed* did not contemplate the issue of which court must determine judicial estoppel as to a debtor, as such a question was not before the court.

Moreover, as Dillon points out, in cases since *Reed*, the Fifth Circuit has upheld bankruptcy courts' determinations of judicial estoppel as to debtors in bankruptcy proceedings separate from the underlying personal injury actions, with no indication that such an arrangement contravenes *Reed*.  *See, e.g.*, *In re Parker*, 789 F. App'x at 463-65 (affirming the bankruptcy court's decision in an adversary proceeding to decline to apply judicial estoppel to the debtor's personal injury claim—which he had filed in Louisiana state court—but requiring the debtor to turn

26

over any recovery to the trustee);[14] *In re Flugence*, 738 F.3d 126, 128, 130 (5th Cir. 2013) (holding that the bankruptcy court did not abuse its discretion in finding the debtor judicially estopped, where the personal injury defendants—whom the debtor had sued in state court—reopened the debtor's bankruptcy case in order to assert judicial estoppel).  Accordingly, Mason's misplaced reliance on *Reed* fails to establish that the unreviewability prong is met in this case.

### 4.     Too Important to be Denied Review

Finally, the court is unconvinced that the issues presented in the Orders are "too important to be denied review."   Notably, "[t]he Supreme Court has explained that, under the collateral-order doctrine, importance and unreviewability are inseparable inquiries.   Bare unreviewability does not suffice."   *Grace*, 826 F.3d at 816 (internal citation omitted) (citing *Mohawk Indus., Inc.*, 558 U.S. at 107).   The Fifth Circuit recently explained that the types of orders that normally warrant review under the collateral order doctrine are those that "implicate[ ] 'some particular value of a high order' or 'substantial public interest.'"   *Leonard*, 38 F.4th at 487

---

[14] Mason's attempt to distinguish *In re Parker* is without merit.   She argues that *In re Parker* is factually distinguishable from her case in that the bankruptcy court was not faced with abstention or dismissal issues because the personal injury defendant asserted judicial estoppel against the debtor in only the adversary proceeding, and not in the state court lawsuit.   The court disagrees and concludes that *In re Parker* is relevant precedent.   Indeed, *In re Parker* only underscores that a bankruptcy court is an appropriate forum to adjudicate the issue of judicial estoppel against the debtor.   Although no trustee was involved in *In re Parker*, as the debtor himself pursued the personal injury claim in the state court lawsuit, the personal injury defendant still sought to litigate the issue of judicial estoppel as to the debtor through an adversary proceeding in bankruptcy court.   789 F. App'x at 463.   Thus, even where the debtor was actually a party to the personal injury lawsuit in state court—unlike here, where Mason concedes that she is not and cannot be a party to the State Court Lawsuit—no reviewing court, including the Fifth Circuit, intimated, much less explicitly stated, that it was improper for the parties to litigate the judicial estoppel issue separately from the personal injury lawsuit.   *See generally id.*   In other words, if no court took issue with litigating the issue of judicial estoppel in the bankruptcy court in *In re Parker*, even though the debtor himself was a party to the state court lawsuit, it is illogical to conclude that judicial estoppel as to the debtor must be litigated in the state court when the debtor is not a party to that lawsuit.

(quoting *Mohawk Indus., Inc.*, 558 U.S. at 107).  The court went on to provide several examples of such orders, including orders that "reject absolute or qualified immunity," "deny a state's Eleventh Amendment immunity," "in the criminal context, deny a defendant's double jeopardy defense," "unseal a nonparty's confidential business documents," or "allow discovery against a nonparty with substantial First Amendment implications."  *Id.*

Here, Mason cannot demonstrate that the Orders present important issues akin to the caliber of those discussed in *Leonard*.  She relies on much the same arguments that she cites when addressing the unreviewability prong, arguing that "the issues of abstention and dismissal are very significant as they ultimately affect the outcome of which court will hear and determine the affirmative defense of judicial estoppel and its application as to the Debtor."  As the court noted earlier, the Bankruptcy Court's ability to exercise jurisdiction over the issue of judicial estoppel as to Mason appears indisputable.  Nevertheless, even if the Bankruptcy Court's jurisdiction is lacking, Mason fails to show how such an issue is so important that it cannot be adequately addressed upon appeal from a final judgment.

Mason also cites *Mt. McKinley* and *Quackenbush* for the proposition that "the right to stay in federal court or the right to return to state court are both sufficiently important issues that merit an interlocutory appeal."  As the court explained at length, *Mt. McKinley* is inapposite to the case at bar.  Furthermore, while *Quackenbush* addressed federalism concerns, the United States Supreme Court condoned review under the collateral order doctrine of a district court's decision

*to abstain* and remand under the *Burford* doctrine.[15]  517 U.S. at 715.  Mason fails to explain how

*Quackenbush* supports her argument about the "importance" prong in this context, where the

Bankruptcy Court has *declined* to abstain under different abstention doctrines—28 U.S.C.

§§ 1334(c)(1) and (2).  Consequently, Mason cannot meet the importance prong, and the court

accordingly concludes that the Bankruptcy Court's Orders are not part of the "small class of

collateral rulings" that are appropriately subject to review under the collateral order doctrine.  *In*

*re Tullius*, 500 F. App'x at 291.

       B.    <u>Leave to Appeal Interlocutory Orders</u>

In the alternative, Mason requests that the court treat her Notice of Appeal as a motion for

leave pursuant to Federal Rule of Bankruptcy Procedure 8004(d) and grant leave for consideration

of the Orders.  Under 28 U.S.C. § 158(a)(3), "the district courts of the United States shall have

jurisdiction to hear appeals . . . with leave of the court, from other interlocutory orders and

decrees of bankruptcy judges[.]"  28 U.S.C. § 158(a)(3).  Ordinarily, a party seeking to appeal

from an interlocutory order of a bankruptcy court under § 158(a)(3) must file a notice of appeal

that is "accompanied by a motion for leave to appeal."  FED. R. BANKR. P. 8004(a)(2); *see* FED.

R. BANKR. P. 8004(b) (describing the required contents of a motion for leave to appeal under

§ 158(a)(3)).  Nevertheless, if the appellant timely files a notice of appeal but fails to include a

motion for leave, the district court "may order the appellant to file a motion for leave, or treat the

_____

[15] Under the *Burford* doctrine, "[d]istrict courts have discretion to abstain from deciding unclear questions of state law arising in complex state administrative schemes when federal court intervention would undermine uniform treatment of local issues."  *Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022) (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 362 (1989); *Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943)); *see Elec. Reliability Council of Tex., Inc. v. Just Energy Tex., L.P.*, 57 F.4th 241, 249 (5th Cir. 2023) ("*Burford* abstention 'allows federal courts to avoid entanglement with state efforts to implement important policy programs.'" (quoting *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 313 (5th Cir. 2021))).

notice of appeal as a motion for leave and either grant or deny it." FED. R. BANKR. P. 8004(d).

"Leave to appeal an interlocutory order of a Bankruptcy Judge . . . should be granted only where circumstances are present which justify overriding the general policy of not allowing such appeals." *In re Hunt Int'l Res. Corp.*, 57 B.R. 371, 372 (N.D. Tex. 1985); *see Enviro-Lite Sols., LLC v. Edinburg Consol. Indep. Sch. Dist.*, No. 7:20-CV-360, 2021 WL 3832818, at *6 (S.D. Tex. Feb. 24, 2021) ("As a general rule, '[i]nterlocutory appeals are disfavored because they "interfere with the overriding goal of the bankruptcy system, expeditious resolution of pressing economic difficulties,"' and 'should be limited to cases presenting exceptional circumstances.'" (quoting *In re Lopez*, No. 7:15-CV-526, 2016 WL 4546884, at *1 (S.D. Tex. Sept. 1, 2016))); *In re Royce Homes LP*, 466 B.R. at 94 ("Interlocutory bankruptcy appeals should be limited to cases presenting exceptional circumstances."). Indeed, courts should grant interlocutory appeals "only in exceptional situations where allowing such an appeal would avoid protracted and expensive litigation." *In re Cent. La. Grain Coop., Inc.*, 489 B.R. 403, 408 (W.D. La. 2013) (quoting *In re Turner*, CIV. A. No. 96-1102, 1996 WL 162110, at *1 (E.D. La. Apr. 3, 1996)). "The decision to grant or deny leave to appeal a bankruptcy court's interlocutory order is committed to the district court's discretion." *Enviro-Lite Sols., LLC*, 2021 WL 3832818, at *6 (quoting *In re O'Connor*, 258 F.3d 392, 399-400 (5th Cir. 2001)).

"The standard the district court applies in determining whether to exercise its discretion to grant leave is not articulated in the statute. Courts in the Fifth Circuit, however, have applied 28 U.S.C. § 1292(b), the standard governing interlocutory appeals generally." *In re Hallwood Energy, L.P.*, 3:12-CV-1902-G, 2013 WL 524418, at *2 (N.D. Tex. Feb. 11, 2013) (citing *Ichinose v. Homer Nat'l Bank* ("*In re Ichinose*"), 946 F.2d 1169, 1177 (5th Cir. 1991); *Panda*

30

*Energy Int'l, Inc. v. Factory Mut. Ins.*, No. 3:11-CV-003-K, No. 3:10-CV-2541-K, 2011 WL 610016, at *3 (N.D. Tex. Feb. 14, 2011)); *see In re Smith*, 2023 WL 2544339, at *4 ("While the Fifth Circuit has not adopted a particular standard for district courts to use to determine 'whether to grant leave to appeal . . . the vast majority of district courts faced with the problem have adopted the standard under 28 U.S.C. § 1292(b) for interlocutory appeals from district court orders.'" (quoting *In re Ichinose*, 946 F.2d at 1177)); *Powers v. Montgomery*, CIV. A. 3:97-CV-1736-P, 1998 WL 159944, at *2 (N.D. Tex. Apr. 1, 1998) ("While there is no set standard in this Circuit for determining whether to grant leave to appeal, the Fifth Circuit has acknowledged that the large majority of district courts faced with the problem have adopted the standard under 28 U.S.C. § 1292(b) for interlocutory appeals from bankruptcy court orders."); *In re Turner*, 1996 WL 162110, at *1 ("Because § 158(a) contains no criteria to guide the exercise of . . . discretion in granting or denying an interlocutory appeal, district courts have looked to standards governing interlocutory appeals in 28 U.S.C. § 1292(b).").

To be appealable, an interlocutory order must:  (1) involve a controlling issue of law; (2) present a question upon which there is substantial ground for difference of opinion; and (3) an immediate appeal of this order must materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *see Ganpat v. E. Pac. Shipping PTE, Ltd.*, 642 F. Supp. 3d 524, 542-43 (E.D. La. 2022) (citing *Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th Cir. 1981)); *Self v. BPX Operating, Co.*, 595 F. Supp. 3d 528, 537 (W.D. La. 2022) (quoting *In re Ichinose*, 946 F.2d at 1177); *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 836, 838-39 (E.D. La. 2014); *Coates v. Brazoria County*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013).  All three of the statutory criteria

must be met before an interlocutory appeal is proper.  *See Aparicio*, 643 F.2d at 1110 n.2; *Self*, 595 F. Supp. 3d at 537; *David*, 37 F. Supp. 3d at 839.

Here, Mason contends that there are two controlling questions of law, namely: (1) "whether or not the Bankruptcy Court can decide a judicial estoppel 'claim' under the guise of the distribution process under § 726(a)" and (2) "the conclusion that because [Mason] is not a party to the State Court Lawsuit and only the Trustee is the party plaintiff, then the judicial estoppel argument with respect to [Mason] cannot be adjudicated within the State Court Lawsuit and must be determined by the Bankruptcy court."  Assuming without deciding that these are indeed controlling issues of law, Mason nevertheless fails to show that these questions present substantial ground for difference of opinion.  Typically, courts determine that there is substantial ground for difference of opinion

> if a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Coates*, 919 F. Supp. 2d at 868-69 (quoting 4 AM. JUR. 2D *Appellate Review* § 124 (2012)); *see Texas v. Ysleta del Sur Pueblo*, 370 F. Supp. 3d 705, 710 (W.D. Tex. 2018) (quoting *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).  "The threshold for establishing a 'substantial ground for difference of opinion' is higher than mere disagreement or even the existence of some contrary authority."  *Coates*, 919 F. Supp. 2d at 868 (citing *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 724 (N.D. Tex. 2006)).  Indeed, "[a] substantial ground for difference of opinion generally 'refers to an unsettled state of law or judicial opinion, not mere discontent by the appealing party.'"  *D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., LLC*, No. 20-1051, 2020

WL 7626817, at *4 (E.D. La. July 14, 2020) (quoting *In re Babcock & Wilcox*, No. 03-01065, 2004 WL 626288, at *2 (E.D. La. Mar. 29, 2004)).

In the present case, Mason maintains that a substantial ground for difference of opinion exists as to the issues she identifies because permitting the Bankruptcy Court to decide judicial estoppel as to Mason will "result in a differing opinion from *Reed* as *Reed* did not bifurcate these issues." Mason, however, has failed to establish that *Reed* stands for the proposition that the trial court deciding the underlying claims—here, the State Court overseeing litigation of the personal injury claims against Dillon—*must* decide the issue of judicial estoppel as to the debtor. Indeed, Mason provides no cases where courts have interpreted *Reed* as articulating such a holding, and she fails to distinguish meaningfully subsequent cases where the Fifth Circuit has affirmed bankruptcy courts' decisions that evaluated judicial estoppel as to debtors in proceedings separate from the underlying personal injury lawsuits. *See, e.g.*, *In re Parker*, 789 F. App'x at 463-65; *In re Flugence*, 738 F.3d at 128. While Mason argues that *In re Parker* itself is evidence that substantially differing opinions exist—purportedly because the Fifth Circuit "allowed a bankruptcy court to decide the issue of judicial estoppel against the debtor rather than sending [it] back to the trial court"—this court rejects such a notion. No part of *In re Parker* acknowledged that it was breaking from any so-called established precedent in *Reed* regarding the proper venue for

33

decisions of judicial estoppel as to the debtor.[16]  Mason has failed to identify any rift in Fifth Circuit case law on this issue, much less any cases confirming that *Reed* sets forth a rule that judicial estoppel as to the debtor must be decided by the same court where the underlying personal injury claims are pending.

Besides her own reading of *Reed* as propounding a nonexistent holding that the Fifth Circuit has inexplicably declined to reference, let alone enforce, in subsequent cases like *In re Parker* and *In re Flugence*, Mason does not provide any basis upon which the court could find that a substantial ground for difference of opinion exists.  She has not set forth any evidence that the Bankruptcy Court's exercise of jurisdiction over the judicial estoppel issue as to debtors such as Mason is "contrary to the rulings of all Courts of Appeals which have reached the issue" or even that "the circuits are in dispute on the question." *Coates*, 919 F. Supp. 2d at 868-69. Additionally, there are no "complicated questions aris[ing] under foreign law." *Id.*  Nor has Mason demonstrated that these issues present "novel and difficult questions of first impression," *id.*, given that there is a recurring practice of bankruptcy courts deciding the issue of judicial estoppel as to the debtor separately from the underlying claims. *See, e.g.*, *In re Parker*, 789 F. App'x at 463-65; *In re Flugence*, 738 F.3d at 128; *In re Lymon*, 2020 WL 7388073, at *6; *In re Howard*, 2015 WL 534559, at *3-4; *In re Broussard*, 351 B.R. at 385, 388.

---

[16] It is not as if the Fifth Circuit failed to consider *Reed* when deciding *In re Parker*.  To the contrary, a robust discussion of *Reed* formed the majority of the court's analysis.  In *In re Parker*, the Fifth Circuit ultimately upheld the bankruptcy court's unusual application of judicial estoppel, wherein "the bankruptcy court declined to apply judicial estoppel to the debtor, allowing him to pursue his undisclosed claim himself, but ordered him to turn over any recovery to the trustee." 789 F. App'x at 464. While acknowledging that this method differed from *Reed*—where the court "appl[ied] judicial estoppel to prevent the debtor from pursuing the undisclosed claim but allow[ed] the trustee to pursue the claim for the benefit of creditors"—the Fifth Circuit found no abuse of discretion in *In re Parker* because "[t]he ultimate outcome is the same in both situations—any personal injury recovery winds up in the hands of the trustee." *Id.*

Generally, courts decline to find a substantial ground for difference of opinion where the party seeking leave to appeal "[is] unable to demonstrate any direct support for [her] argument." *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-7889, 2023 WL 3641949, at *3-4 (E.D. La. Feb. 2, 2023) (noting that, although the defendants cited eight cases purportedly supporting their argument, none of the cited cases actually imposed the requirement that they were seeking, and they thus failed to provide "so much as a single case in support of their position"); *see In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2047, 2018 WL 2095729, at *5-6 (E.D. La. May 7, 2018) (opining that "the Court [saw] little, if any, ground for difference of opinion" where the movants "rel[ied] on some academic critique—rather than case law—to support their position"); *Abecassis v. Wyatt*, No. H-09-3884, 2014 WL 5483724, at *4 (S.D. Tex. Oct. 29, 2014) (refusing to find a substantial ground for difference of opinion where the party seeking permission to appeal "[had] not identified any contrary authority to that legal proposition, and the court's interpretation [was] consistent with other courts").  Accordingly, because Mason has failed to produce any contrary authority, the court is unable to conclude that a substantial ground for difference of opinion exists as to the issues she identifies in the case at bar.  As a result, Mason has failed to establish at least one of the necessary criteria for an interlocutory order to be immediately appealable under 28 U.S.C. § 158(a)(3).  Because Mason fails on the substantial

ground for difference of opinion prong, the court declines to grant leave to appeal on that ground and need not address the other § 1292(b) factors.[17]

III.   Conclusion

Pursuant to Federal Rule of Bankruptcy Procedure 8004, Mason's Notice of Appeal is construed as a motion for leave to file an interlocutory appeal.  In accordance with the foregoing analysis, Dillon's Motion to Dismiss Appeal (#2) is GRANTED, and Mason's request for leave to file an interlocutory appeal is DENIED.  As a consequence, this court is without jurisdiction to consider the appeal.  Therefore, this appeal is DISMISSED and REMANDED.

The Clerk of the Court is directed to forward a copy of this order to the United States Bankruptcy Court for the Eastern District of Texas.

---

[17] Because the court does not have subject matter jurisdiction over this interlocutory appeal, it need not reach Dillon's argument that this court is precluded from reviewing the Bankruptcy Court's Orders under 28 U.S.C. § 1334(d), which provides that most abstention decisions—excluding "a decision not to abstain in a proceeding described in subsection (c)(2) [governing mandatory abstention]"—are "not reviewable by appeal or otherwise by the courts of appeals under section 158(d), 1291, or 1292 of this title." 28 U.S.C. § 1334(d).  At any rate, the court recognizes that, as Mason notes:

> [C]ourts have held that the terms "by appeal" and "by the courts of appeals" [in § 1334(d)] do not include the district court acting in its appellate capacity in relation to the bankruptcy court, and thus, section 1334(d) does not preclude a district court from reviewing a bankruptcy court's decision to abstain.

*Genesis Producing Co., L.P. v. Smith Big Oil Corp.*, No. H-13-3342, 2014 WL 3897831, at *2 (S.D. Tex. Aug. 8, 2014) (citing *In re Bristol Res. 1994 Acquisition Ltd. P'ship*, 333 F.3d 608, 610-11 (5th Cir. 2003); *In re Midgard Corp.*, 204 B.R. 764, 768 (B.A.P. 10th Cir. 1997); *Dean v. Suntrust Bank*, No. 1:07-cv-00248-JEC, 2007 WL 1953151, at *3 (N.D. Ga. June 29, 2007)); *see In re Jackson Brook Inst., Inc.*, 227 B.R. at 575 (reasoning that the district court was "not barred from considering the Bankruptcy Order in its entirety" because "[t]he 'court of appeals' referred to in section[ ] 1334(d) . . . has its jurisdiction by virtue of sections 153(d), 1291, or 1292," whereas the district court's jurisdiction "arises under [28 U.S.C.] § 158(a)"); 1 COLLIER ON BANKRUPTCY ¶ 3.05[6][a], LexisNexis (database updated June 2023) (explaining that decisions to abstain under discretionary abstention, decisions not to abstain under discretionary abstention, and decisions to abstain under mandatory abstention "are appealable only to the district court or bankruptcy appellate panel").

SIGNED at Beaumont, Texas, this 11th day of October, 2023.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE